IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**VANESSA L.,**

    **Plaintiff,**

vs.                                                                   CIVIL ACTION NO. 5:23-CV-00660

**MARTIN J. O'MALLEY,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered October 10, 2023 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in Support of Complaint and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 7, 8)

    Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request to reverse and remand for an outright award of benefits, or to remand this matter for further proceedings (ECF No. 7), **GRANT** the Defendant's request to affirm the decision of the

1

Commissioner (ECF No. 8); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on November 25, 2020, and her application for SSI on January 21, 2022; in both applications, she alleged her disability began on February 8, 2019 due to osteoarthritis in the left knee, peripheral neuropathy in both legs, muscle damage and weakness in the left leg, incontinence, and a pinched nerve in her back. (Tr. at 11, 225-226, 234, 258)[1] Her claim for DIB was initially denied on June 11, 2021 (Tr. at 144-148) and both claims were denied upon reconsideration[2] on February 15, 2022 (Tr. at 11, 155-159, 165-167). Thereafter, the Plaintiff filed a written request for hearing on March 17, 2022. (Tr. at 173-174)

An administrative hearing was held on November 15, 2022 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ"). (Tr. at 95-108) On February 27, 2023, the ALJ entered an unfavorable decision. (Tr. at 8-28) On February 27, 2023, the Appeals Council denied the Plaintiff's Request for Review (Tr. at 223-224), thus the ALJ's decision became the final decision of the Acting Commissioner. (Tr. at 1-7)

On October 6, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter

---

[1] In addition to her conditions, the Plaintiff alleged she stopped working because her employer closed the business. (Tr. at 258)

[2] Because the Plaintiff filed her application for SSI when she requested reconsideration on her DIB claim, the Social Security Administration (SSA) processed her SSI claim as though she had requested reconsideration on it as well, and thus the determination is both an initial and reconsideration determination (Tr. at 166).

referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed a Brief in Support of Complaint (ECF No. 7); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8), to which the Plaintiff filed her Reply Brief (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 51 years old as of the alleged onset date, and was 55 years old at the time of the administrative hearing, and therefore transitioned from a person "closely approaching retirement age" to a person of "advanced age" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(d), (e), 416.963(d), (e). (Tr. at 227) She obtained her GED and last worked as an order clerk, classified as a semi-skilled, sedentary exertion occupation. (Tr. at 259, 109)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether the claimant suffers

from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c):

4

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through September 30, 2024. (Tr. at 13, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of February 8, 2019. (Tr. at 14, Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: neuropathy; hypothyroidism; obesity; osteoarthritis; and paresthesia. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 16, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except:

>this individual can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, but may never crawl. This individual is capable of tolerating occasional exposure to extreme cold, heat, vibration, and atmospheric conditions as that term is defined in the Selected Characteristic of Occupations. The individual would need to avoid exposure to all workplace hazards such as moving machinery or unprotected heights.

(Tr. at 17, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as an order clerk. (Tr. at 23, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability since February 8, 2019 through the date of the decision. (Tr. at 24, Finding No. 7)

**The Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff argues that that ALJ erred in a couple of areas regarding the fourth step finding: first, the RFC fails to account for the Plaintiff's cane use; and second, the RFC also fails to account for the Plaintiff's proven mental functional limitations without explanation. (ECF No. 7 at 3) The Plaintiff argues that although the ALJ recognized the Plaintiff's need for a cane, she neither presented any hypothetical question to the vocational expert about this, nor include its use in the RFC, without any explanation for this omission. (Id. at 3-5) The vocational impact of such cane use on the ability to perform her past relevant work is unknown and warrant remand. (Id. at 5) Additionally, while the ALJ found mild limitations in all four domains of mental functioning, none were included in the RFC, and without explanation; numerous courts nationwide have deemed such omissions without explanation as reversible error – none of which were appealed by the SSA. (Id. at 5-12, 14) Because this case does not turn on the Plaintiff's ability to return to unskilled work, but to semi-skilled work, the ALJ's omission is especially prejudicial, therefore

an explanation as to why the Plaintiff's mental functioning limitations were excluded from the RFC is necessary. (Id. at 13-16) The Plaintiff asks this Court to reverse and remand for an outright award of benefits, or for further administrative proceedings. (Id. at 17)

In response, the Commissioner contends that the ALJ provided a comprehensive explanation for the RFC findings. (ECF No. 8 at 9) First, the Plaintiff has not proved that her cane was "medically required" pursuant to legal standards, therefore the ALJ was not obligated to accommodate the use of it in the RFC assessment. (Id. at 9-11) Further, the Commissioner argues that in this Circuit, there is no *per se* rule that an ALJ's findings in the four broad areas of mental functioning must be addressed in the RFC assessment, only that the ALJ's analysis allows for meaningful review, and is to be taken on a case-by-case basis. (Id. at 11-13) In this case, the facts fail to demonstrate the Plaintiff had work-related limitations, and the ALJ was clear that both severe and nonsevere impairments were considered in the RFC determination, which included the Plaintiff's nonsevere mental impairments. (Id. at 14-15) In this case, the ALJ noted the RFC reflected exactly the degree of limitation she found in the mental functioning analysis at step two, that is, the mild limitations did not warrant RFC restrictions. (Id. at 16) The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id. at 17)

In reply, the Plaintiff contends the Commissioner only offers improper *post hoc* rationalizations for the ALJ's findings, and reasserts that the ALJ found the Plaintiff's cane use was medically necessary, but failed to accommodate its use in the RFC. (ECF No. 9 at 1-3) The Plaintiff reiterates her arguments that the ALJ did not include her mental functional limitations in the RFC finding, or explain why they were omitted, despite the finding she could return to her past

relevant semi-skilled work; this Court, including many other courts, found such errors worthy of remand. (Id. at 3-6) Again, the Plaintiff asks this Court to reverse and remand for an outright award of benefits, or to remand this matter for further proceedings. (Id. at 7)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

<u>Physical Impairments:</u>

As for the Plaintiff's physical health, she was noted to have severe degenerative joint disease of the left knee as of August 23, 2019 (Tr. at 367). By January 29, 2020, she reported pain and paresthesia (feeling of pins and needles) in her legs and left arm, and chronic back pain. (Tr. at 377). During a consultative physical examination with Daniel Olsen, D.O., on May 8, 2021, the Plaintiff's neurological examination was grossly normal and there were no balance problems, although she ambulated with a reciprocal gait and waddled from side to side (Tr. at 398). Although the Plaintiff noted to Dr. Olsen that she had a cane at home, she did not use a cane during her visit (Tr. at 400). Dr. Olsen noted that the Plaintiff's difficulty in movement was likely due to her weight as well as to pain in her left leg, and the doctor stated, "size is the biggest factor I believe" (Tr. at 398). On examination, she could lift, carry, and handle light objects; she could not squat; she could rise from a sitting position without assistance, but with great difficulty; and she could not lay down

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

and would not try (Tr. at 399). Dr. Olsen noted the Plaintiff was able to rise from the examination table multiple times without assistance but struggled to do so (Tr. at 399). Her sensation and reflexes were grossly intact, and her fine motor coordination and handling was normal (Tr. at 400). Dr. Olsen noted that "given her physical difficulty and size, most physical labor would be difficult for her" (Tr. at 400).

The Plaintiff also had a physical examination in January 2022 with Active Fitness & Physical Therapy, where her gait was antalgic, but her range of motion was normal throughout (Tr. at 540-541). The Plaintiff had full strength throughout her arms and legs; her reflexes and sensitivity to light touch were intact in both arms; and her straight leg raising tests were negative (Tr. at 541).

Mental Impairments:

At a consultative mental health examination on May 26, 2021, Emily Engelland Wilson, M.A., noted that Plaintiff reported she has had trouble with her memory and concentration since she stopped working (Tr. at 405). On mental status examination, her immediate memory was normal, her recent memory was moderately impaired, and her remote memory was mildly deficient (Tr. at 406-407). Additionally, Ms. Wilson observed that the Plaintiff's social functioning was within normal limits; she responded appropriately and displayed good social skills throughout the evaluation; she stated she regularly visits with family and talks on the phone; and she keeps medical appointments, although the Plaintiff noted that she did not attend church or other social functions (Tr. at 407). Although the Plaintiff reported that she rarely went to the store or ran errands, it was not due to any mental health issues (Id.). She also told Ms. Wilson that she was able to perform some household chores and had a valid driver's license (Id.).

The Plaintiff's mental health records further show that her memory and mental status were within normal limits, although at times, she was noted to be lethargic and confused (Tr. at 466, 476, 514, 518, 526). The Plaintiff also reported that she "blacked out" one day in January 2022 after she may have fallen, as she was "missing most of the day in her memory" (Tr. at 574).

<u>Prior Administrative Medical Findings and Opinion Evidence:</u>

At the initial level of review, state agency medical reviewer Fulvio Franyutti, M.D., found that the Plaintiff could perform sedentary exertional level work with limitations in pushing and pulling with the left leg; can never climb ladders, ropes, or scaffolds, but could occasionally perform all other postural movements; and environmentally, she must avoid concentrated exposure to extreme cold, extreme heat, vibration, pulmonary irritants, and even moderate exposure to hazards (Tr. at 119-121). On reconsideration, Amy Wirts, M.D., also found the Plaintiff could perform sedentary exertional level work (Tr. at 132-134). Dr. Wirts found that the Plaintiff could never climb ladders, ropes and scaffolds, but she could occasionally perform all other postural motions, and must avoid concentrated exposure to extreme cold, extreme heat, vibration, pulmonary irritants and must avoid even moderate exposure to hazards (Tr. at 133-134).

As noted above, Dr. Olsen opined that most physical labor would be difficult for the Plaintiff (Tr. at 400).

On initial review, state agency mental health reviewer Debra Lilly, Ph.D., reviewed the record and determined that the Plaintiff had mild limitations in all four areas of the "paragraph B" mental criteria, and noted that the preponderance of the evidence, including the Plaintiff's report of functioning and limitations, did not support severe functional limitations related to a mental disorder (Tr. at 117). On reconsideration, Jeff Boggess, Ph.D., affirmed the findings of Dr. Lilly,

11

noting that there was no new psychological-based medical evidence of record other than follow-up visits to a primary care physician showing normal mental status examination findings (Tr. at 131). Dr. Boggess further supported his findings by highlighting that the Plaintiff had non-severe limitations based on the consultative examination and treating source records (Id.).

**The Administrative Hearing:**

    The Plaintiff's Testimony:

    The Plaintiff testified that she weighs approximately 400 pounds and uses a cane; she described difficulties with standing, bending to put on clothes, and getting in and out of the shower, mainly due to her left leg. (Tr. at 100) When sitting, after about fifteen minutes, her left leg swells, making it "impossible" to stand; this also makes it difficult to go to the bathroom, and the Plaintiff endorsed wetting herself because of it. (Tr. at 100-101) She has panic attacks from being afraid to leave the house because she may pee on herself; she described the panic attacks where she feels as if she cannot breathe, gets nauseous, and starts dry heaving (Tr. at 101-102).

    The Plaintiff testified that she obtained an associate degree online for medical office administration, however, when asked during interviews what prevents her from doing such jobs, she does not get another interview (Tr. at 103-104).

    The Vocational Expert's Testimony:

    The vocational expert categorized the Plaintiff's past work as sedentary, semi-skilled work (Tr. at 105). In response to the ALJ's controlling hypothetical, the vocational expert testified that the hypothetical individual would be capable of performing the Plaintiff's past work (Tr. at 105-106). The ALJ then asked the vocational expert whether an addition to the hypothetical requiring the individual no more than occasional interaction with coworkers and not perform any work at an

assembly line or production rate pace or involving strict production quotas would affect the ability to do the Plaintiff's past work, and the vocational expert replied that it would not (Tr. at 106).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The Absence of Use of Assistive Device in the RFC Assessment:

Regarding the Plaintiff's first point of contention with the ALJ's RFC assessment as it relates to her need for an assistive device, the undersigned notes that the following Ruling provides further guidance when the issue of hand-held assistive devices arises:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

See, *Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *7. (**bold** in original) From the undersigned's review of the evidence of record, there is no medical documentation establishing the Plaintiff's cane was medically required pursuant to this Ruling (See, e.g., Tr. at 454, 561). Further, as noted by the parties, the ALJ did consider the Plaintiff's cane use; the ALJ often compared that evidence with the medical record: she has normal gait and station (Tr. at 16, 416)[4]; and during the examination with Dr. Olsen, the Plaintiff's balance was intact, she was able to sit, stand, and walk but with great difficulty and with shortness of breath, but she was able to rise from the examination table multiple times without assistance, and she "did not use an assistive device, although she reported she had a cane at home (Tr. at 16, 19, 395-403) From this evidence, the ALJ determined the Plaintiff did not have an extreme limitation in her ability to stand up or balance. (Tr. at 16) When assessing whether the Plaintiff's arthralgia and osteoarthritis met listing 1.18 at step three of the sequential evaluation

---

[4] This is a treatment note dated September 27, 2021 from the Plaintiff's primary care provider.

process, and again when assessing her RFC, the ALJ noted that the evidence did "not establish a medical need for an assistive device a walker, cane(s), crutch(es), wheeled and seated mobility device . . . .", although the ALJ did recognize that the Plaintiff "was advised to get a wide based quad cane to use for abnormalities of gait and mobility on January 26, 2022 (Tr. at 17, 20, 454)[5] The ALJ also noted that with the use of the quad cane, the Plaintiff no longer experienced falls, and observed the quad cane would be used in only one hand (Tr. at 17, 20, 554-562).

The foregoing demonstrates that the ALJ examined the medical record during the relevant period, finding that it established that the Plaintiff did not need an assistive device in order to ambulate, but to prevent falls. The ALJ's failure to acknowledge that the Plaintiff's cane use for the RFC determination does not constitute reversible error because, as noted *supra*, there is no evidence in the record establishing a medical need for an assistive device, and further, it is clear that the ALJ also "consider[ed] the particular facts of [this] case" in accordance with the pertinent Ruling. In short, the ALJ did not err by failing to account for the Plaintiff's cane use in the RFC, as there is no evidence that such use would have significantly eroded her capacity for performing her past relevant sedentary work.

The Absence of Mental Limitations in the RFC Assessment:

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The

---

[5] It is also notable that on that date, the Plaintiff was "encouraged to comply with low card diet and exercise 30 minutes a day 6 days of the week." (Tr. at 454)

15

RFC is an administrative finding within the ALJ's exclusive jurisdiction. See Id. §§ 404.1546(c), 416.946(c); see also Id. §§ 404.1520c(a), 416.920c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. §§ 405.1545(a)(3), 416.945(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's finding that the Plaintiff had mild limitations all four areas of functioning[6] based on the overall record of evidence, described *supra* (Tr. at 14-15). It is noted by the parties that this District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021)(Copenhaver, J.); *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D.W. Va. May 21, 2021)(Tinsley, M.J.)(citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)(a claimant's "moderate limitation in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus "does not translate into a limitation in [her RFC]")), *report and recommendation adopted*, 2021 WL 5230987 (S.D.W. Va. Nov. 9, 2021)(Copenhaver, J.). The point of contention centers on whether the ALJ did an adequate job explaining why she did not account for the Plaintiff's mild limitations in all areas of mental functioning in the RFC determination. As an initial matter, the Plaintiff does not challenge the ALJ's finding that her mental health impairments were non-severe,

---

[6] A "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00F(2)(b).

but, as noted *supra*, takes issue with the ALJ's analysis at step two of the sequential evaluation process without providing further insight into how the ALJ accounted for the Plaintiff's mild limitations in the RFC, or at least explain why they were omitted.

From the undersigned's review, it is apparent that the ALJ did explain why the Plaintiff's mild limitations mental functioning were excluded from the RFC: first, the ALJ acknowledged the Plaintiff's testimony that she had panic attacks, which in addition to her other impairments, contributed to her inability to work (Tr. at 18). The ALJ also examined the medical records that would account for the Plaintiff's mild mental functioning: "[d]espite alleging debilitating symptoms due to their physical and mental [*sic*], the claimant has maintained varied and robust activities of daily living that are inconsistent with her claims of disability. Treatment records document that the claimant was taking full-time, online classes in June 2020." (Tr. at 18, 21, 487) The ALJ also noted that in her Adult Function Report, the Plaintiff reported she cares for a pet cat, and lives alone, although she stated that her grandson helped with chores – the ALJ observed that medical records from January 2022 and August 2022 suggested that the grandson lives with the Plaintiff, indicating that she is providing some care to him, and that he is a young child. (Tr. at 21-22, 575)[7] Significantly, the ALJ also considered the prior administrative findings of the state agency psychological consultants, *supra*, finding both opinions to be generally persuasive to the extent that the Plaintiff did not have severe mental impairments, and that both consultants determined the Plaintiff had mild limitations in all four areas of the "paragraph B" criteria. (Tr. at

---

[7] Of some relevance here is that the ALJ noted that the records showed that the Plaintiff did not stop working on account of her "physical impairments, but because the company shut down and the claimant no longer had a place of employment." (Tr. at 22, 509, 400)

17

23) Ultimately, the ALJ found that "[b]ased on the foregoing . . . the claimant has the above [RFC] assessment, which is supported by . . . the claimant's functioning activities of daily living that include attending online classes." (Id.)

The undersigned observes that the case at bar is quite similar to another matter that came before this Court: in *Tammy R. v. Kijakazi*, No. 1:22-cv-00395, 2023 WL 6122140 (S.D.W. Va. Aug. 31, 2023)(Tinsley, M.J.), *report and recommendation adopted*, 2023 WL 6130565 (S.D.W. Va. Sep. 19, 2023)(Faber, J.), the Court affirmed the Commissioner's final decision that the claimant could return to her past relevant skilled work, despite finding mild limitations in all four areas of mental functioning; in that case, the adjudicator explained at step two that the claimant had no more than minimal work-related limitations due to her mental impairments, thus it was unnecessary to include them in the RFC determination. *Id*. at *8. In this case, the Plaintiff's past relevant work was classified as semi-skilled, which is not disputed, but the ALJ herein went beyond her step two analysis, and explained why the Plaintiff's mental limitations did not preclude her from performing her past relevant work:

> In comparing the claimant's residual functional capacity with the physical and *mental* demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The vocational expert, in response to a question from the undersigned that accurately reflected the above residual functional capacity, compared the requirements of the position of order clerk to the claimant's restrictions and found that the claimant was capable of this job in both actual and general performance. The undersigned, after a review of the evidence and a comparison between the *functioning* of the claimant and the requirements of the position, concurs with the vocational expert and finds that the claimant can perform this past relevant work.

(Tr. at 24)(emphasis added)

In sum, the ALJ complied with her obligation under Sections 404.1545(a), 416.945(a) and SSR 96-8p, as she not only discussed all the relevant evidence as it related to the Plaintiff's mild limitations, but she also adequately explained why those restrictions were not included in the RFC assessment. Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review. See Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015).

In short, the resulting RFC assessment concerning both the Plaintiff's physical and mental impairments included the required discussion of all the relevant evidence that allows for meaningful judicial review. It is also clear that the RFC assessment is not a product of cherry-picking facts that support a finding of non-disability. Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). In this case, the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Accordingly, the undersigned **FINDS** that the RFC assessment is supported by substantial evidence, and the undersigned further **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

### Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request to reverse and remand for an outright award of benefits, or to remand this matter for further proceedings (ECF No. 7), **GRANT** the Defendant's request to affirm the decision (ECF No. 8), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: January 30, 2024.



Omar J. Aboulhosn
United States Magistrate Judge