UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

VANESSA L.,

    Plaintiff,

v.                                     CIVIL ACTION NO. 5:23-cv-00660

MARTIN J. O'MALLEY,
*Commissioner of Social Security Administration*

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiff's civil action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). [ECF 2].

### I.

The procedural history of Plaintiff's claim for benefits under Title II of the Act is set forth in depth in the Proposed Findings and Recommendation (PF&R) compiled by the Honorable Omar J. Aboulhosn, United States Magistrate Judge. The Court provides a brief recitation of those facts here. [*See* ECF 10].

Plaintiff first filed an application for Disability Insurance Benefits ("DIB") on November 25, 2020, and her application for Supplemental Security Income ("SSI") on January 21, 2022; in both applications, she alleged her disability began on February 8, 2019, due to osteoarthritis in the left knee, peripheral neuropathy in both legs, muscle damage and weakness in the left leg, incontinence, and a pinched nerve in her back. [ECF 6 at 15, 229-230, 238, 262]. Her

claim for DIB was initially denied on June 11, 2021, and both claims were denied upon reconsideration on February 15, 2022 [ECF 6 at 15, 148-152, 159-163, 169-167].

Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and her claim was heard by the Honorable Francine Serafin. [ECF 6 at 99-112, 177-178]. Judge Serafin issued a decision finding that the Plaintiff was not disabled on February 27, 2023. [ECF 6 at 12-32]. The Appeals Council denied Plaintiff's request for review of the final decision. [ECF 6 at 227-228].

On October 6, 2023, Plaintiff filed this present action seeking judicial review of the administrative decision. [ECF 2]. By standing order, this case was referred to Magistrate Judge Omar J. Aboulhosn. [ECF 3]. On January 30, 2024, he filed his Proposed Findings and Recommendation ("PF&R") on the matter. [ECF 10]. Therein, Magistrate Judge Aboulhosn detailed the medical records pertaining to Plaintiff's physical and mental impairments, the prior administrative medical findings and opinion evidence, and the testimonies of Plaintiff and the vocational expert ("VE") at the Administrative Hearing. [ECF 10 at 9-13].

Of particular importance, the magistrate judge noted that the ALJ considered Plaintiff's use of a cane in her determination:

> [T]here is no medical documentation establishing . . . [Plaintiff]'s cane was medically required pursuant to this Ruling (See, e.g., Tr. at 454, 561). Further, as noted by the parties, the ALJ did consider the [Plaintiff]'s cane use; the ALJ often compared that evidence with the medical record: she has normal gait and station (Tr. at 16, 416); and during the examination with Dr. Olsen, . . . [Plaintiff]'s balance was intact, she was able to sit, stand, and walk but with great difficulty and with shortness of breath, but she was able to rise from the examination table multiple times without assistance, and she "did not use an assistive device, although she reported she had a cane at home (Tr. at 16, 19, 395-403) From this evidence, the ALJ determined . . . [Plaintiff] did not have an extreme limitation in her ability to stand up or balance. (Tr. at 16) When assessing whether . . . [Plaintiff]'s arthralgia and osteoarthritis met listing 1.18 at step three of the sequential evaluation process,

> and again when assessing her RFC, the ALJ noted that the evidence did "not establish a medical need for an assistive device a walker, cane(s), crutch(es), wheeled and seated mobility device . . . .", although the ALJ did recognize that . . . [Plaintiff] "was advised to get a wide based quad cane to use for abnormalities of gait and mobility on January 26, 2022 (Tr. at 17, 20, 454)5 The ALJ also noted that with the use of the quad cane, . . . [Plaintiff] no longer experienced falls, and observed the quad cane would be used in only one hand (Tr. at 17, 20, 554-562).

[ECF 10 at 14-15]. Based on the foregoing, the magistrate judge found as follows upon his review:

> [T]he medical record during the relevant period [indicates] that it [is] established that . . . [Plaintiff] did not need an assistive device in order to ambulate, but to prevent falls. The ALJ's failure to acknowledge that . . . [Plaintiff]'s cane use for the RFC determination does not constitute reversible error because, as noted *supra*, there is no evidence in the record establishing a medical need for an assistive device, and further, it is clear that the ALJ also "consider[ed] the particular facts of [this] case" in accordance with the pertinent Ruling. In short, the ALJ did not err by failing to account for . . . [Plaintiff]'s cane use in the RFC, as there is no evidence that such use would have significantly eroded her capacity for performing her past relevant sedentary work.

[ECF 10 at 15].

Pertaining to Plaintiff's argument that the ALJ did not explain the absence of mental limitations in the RFC Assessment, the magistrate judge observed the following:

> [I]t is apparent that the ALJ did explain why the [Plaintiff]'s mild limitations mental functioning were excluded from the RFC: first, the ALJ acknowledged . . . [Plaintiff]'s testimony that she had panic attacks, which in addition to her other impairments, contributed to her inability to work (Tr. at 18). The ALJ also examined the medical records that would account for . . . [Plaintiff]'s mild mental functioning: "[d]espite alleging debilitating symptoms due to their physical and mental [sic], the claimant has maintained varied and robust activities of daily living that are inconsistent with her claims of disability. Treatment records document that the claimant was taking full-time, online classes in June 2020." (Tr. at 18, 21, 487) The ALJ also noted that in her Adult Function Report, . . . [Plaintiff] reported she cares for a pet cat, and lives alone, although she stated that her grandson helped with chores – the ALJ observed that medical records from January 2022 and August 2022 suggested that the grandson lives with . . . [Plaintiff], indicating that she is providing some care to him, and that he is a young child. (Tr. at 21- 22, 575) 7 Significantly, the ALJ also considered the prior administrative findings of the state agency psychological consultants, supra, finding both opinions to be generally persuasive to the extent that . . . [Plaintiff] did not have severe mental impairments, and that both consultants determined . . . [Plaintiff] had mild limitations in all four

3

> areas of the "paragraph B" criteria. (Tr. at 23) Ultimately, the ALJ found that "[b]ased on the foregoing . . . the claimant has the above [RFC] assessment, which is supported by . . . the claimant's functioning activities of daily living that include attending online classes." (Id.)

[ECF 10 at 17-18]. Based on the foregoing reasons, the magistrate judge conclude upon review as follows:

> [The] ALJ complied with her obligation under Sections 404.1545(a), 416.945(a) and SSR 96-8p, as she not only discussed all the relevant evidence as it related to . . . [Plaintiff]'s mild limitations, but she also adequately explained why those restrictions were not included in the RFC assessment. Thus, this Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review.

[ECF 10 at 19].

In sum, the magistrate judge concluded the RFC assessment included all relevant evidence concerning Plaintiff's physical and mental limitations that are required for meaningful judicial review. Additionally, the magistrate judge also found that the RFC was "not a product of cherry-picking facts that support a finding of non-disability" *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017); and that the ALJ "buil[t] an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

On February 13, 2024, Plaintiff filed her two objections to the PF&R. [ECF 11]. Plaintiff's first objection contends that "[t]he [PF&R] fails to appreciate that the ALJ herself found that Plaintiff was required to use a cane consistent with the unrebutted medical evidence of record." [ECF 11 at 1]. Plaintiff's second objection argues that "[t]he ALJ never explained why she omitted Plaintiff's proven mental functional limitations from the RFC." [ECF 11 at 4].

4

On February 21, 2024, the Commissioner filed his response to Plaintiff's two objections. [ECF 12]. In response to Plaintiff's first objection, the Commissioner maintains that "Plaintiff failed in her burden of proof. Without the requisite documentation, there can be no finding that a cane is 'medically required' as provided by the Social Security rulings." [ECF 12 at 1]. The Commissioner's response to Plaintiff's second objection argues that the exclusion of the mental limitations from the RCF was proper because the mental limitations in all four relevant categories were "mild," and thus non-severe. [ECF 12 at 4].

On February 26, 2024, Plaintiff filed her "Objections Reply Brief" arguing against defendant's contentions and in further support of her objections to the PF&R. [ECF 13].

## II.

Judicial review is authorized by federal law when the Commissioner denies a claimant social security benefits. 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). However, the courts are "extremely limited" in their scope of review. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). A reviewing court "must uphold the factual findings of the Secretary [or ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

"Substantial evidence" consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderace." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hancock*, 667 F.3d at 472. In a Court's review for substantial evidence, the Court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute our judgment for that of the Secretary." *Craig*, 78 F.3d at 589. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Thus, the issue before this court is not whether Plaintiff is disabled, but whether there is substantial evidence to warrant a finding by the ALJ that she is not disabled, and that the decision was reached through a correct application of the law. *See Id.*

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock*, 667 F.3d at 472 (*citing* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* An adverse finding against the claimant at any of the aforementioned steps means that the claimant will be denied benefits. *Bennett v. Sullivan*, 917 F.2d 157, 159 (4th Cir. 1990).

The court reviews *de novo* the portions of the magistrate judge's PF&R to which objections are timely filed. 28 U.S.C. § 636(b)(1)(b); *see Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### III.

*A. The Absence of Use of an Assistive Device in the RFC Assessment*

Plaintiff challenges the ALJ's failure to acknowledge her cane use in the RFC assessment. The magistrate judge noted there is no evidence in the record indicating that the cane

was medically necessary nor "would [it] have significantly eroded her capacity for performing her past relevant sedentary work." [Doc. 10 at 14-15]. Specifically, Plaintiff argues "there is unrebutted record evidence establishing the medical necessity, and in fact efficacy, of cane use since January of 2022." [Doc. 11 at 2]. She further avers that "the ALJ's own words show that Plaintiff was required to use a cane to prevent falls from occurring." [*Id.* at 3]. The Commissioner contends that Plaintiff provided no documentation indicating that the cane was medically required because, although the cane was "to prevent falls from continuing to occur," there is no evidence indicating the circumstances under which the cane was to be used. She is thus asserted to have failed in her burden of proof. [ECF 12 at 2-3].

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

Regarding the ALJ's RFC assessment as it relates to the need for a hand-held assistive device, the following Social Security Ruling ("SSR") provides guidance when that issue arises:

*See*, *Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9P, 1996 WL 374185, at *7. It is important to note that SSR 96-9P addresses the use of hand-held assistive devices by individuals capable of less than a full range of sedentary work. Some courts, however, have referred to SSR 96-9P "for direction when a claimant alleges that the ALJ failed to properly consider his or her use of a hand-held assistive device in the RFC analysis." *Daniels v. Saul*, No. 2:20-cv-230, 2021 WL 667945, at *8 (S.D.W. Va. Jan. 26, 2021), *report and recommendation*

*adopted*, 2021 WL 665534 (S.D.W. Va. Feb. 19, 2021) (citing *Lovejoy v. Berryhill*, No. 2:17-cv-2921, 2018 WL 2729240, at *14 (S.D.W. Va. May 2, 2018), *report and recommendation adopted*, 2018 WL 2728032 (S.D.W. Va. June 5, 2018).

Given that the ALJ's inquiry is fact-specific, "[a] prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *Daniels*, 2021 WL 667945, at *8 (quoting *Fletcher v. Colvin*, No. 1:14-cv-380, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (internal quotation marks omitted)). "Self-reports and references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Paxton v. Berryhill*, No. 2:18-cv-493, 2019 WL 1376073, at *2 (S.D.W. Va. Mar. 27, 2019) (quoting *Johnson v. Berryhill*, No. 2:15-cv-28, 2017 WL 772063, at *9 (W.D. Va. Feb. 23, 2017)); *Tripp v. Astrue*, 489 F.App'x 951, 955 (7th Cir. 2012); *see also Staples v. Astrue*, 329 F.App'x 189, 191-92 (10th Cir. 2010) (finding that a doctor's statement that the claimant "uses a cane to walk" did not establish medical necessity). "If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment." *Id.* (quoting *Helms v. Berryhill*, 2017 WL 3038154, at *8 (E.D. Va. June 30, 2017)).

The magistrate judge recognized there is no unambiguous medical opinion or documentation from a physician that establishes the cane as medically necessary within the meaning of SSR 96-9P.[1] The only evidence in the record that Plaintiff identifies is that she was

---

[1] To the extent Plaintiff cites to 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(C)(6)(a) for the proposition that "SSA policy 'do[es] not require that you have a specific prescription for the assistive device'" . . . but merely requires that "'there is evidence from a medical source that supports your medical need for an assistive device,'" such contention fails to bolster her ultimate

8

prescribed a quad cane to remedy "abnormalities of gait and mobility" and to prevent falls. [ECF 6 at 458]. However, these facts are not dispositive of medical necessity. [*Id.* at 21; 458], *Daniels*, 2021 WL 667945, at *8. As the Commissioner correctly identifies, the doctor's order indicates the cane be "used as directed;" however, there is no indication in the record of the circumstances in which the cane ought to be used as required by SSR 96-9P. [ECF 12 at 3]. Merely because a cane was prescribed to prevent falls, and has even been proven effective, does not automatically make it medically necessary when the record is devoid of the circumstances of when it is to be used. [ECF 11 at 1-2]; *Paxton*, 2019 WL 1376073, at *2.

Plaintiff proffers that those circumstances are implied under the notion that "prevent[ing] falls from happening all of the time" requires consistent cane use. [ECF 13 at 2]. However, this argument is without merit. The record indicates that not only did she not bring her cane to her disability exam with Dr. Daniel Olsen, but her balance was intact, she was able to sit, stand, and walk, albeit with great difficulty, and she could carry and lift light objects. [ECF 6 at 20]. In other words, Plaintiff did not need her cane consistently to perform sedentary level tasks as defined in 20 C.F.R. 404.1567(a) and 416.967(a). [*Id.* at 21-26]. The ALJ could not have, and in fact did not, find an extreme limitation in her abilities to stand up or balance. [*Id.*]. The record contains a dearth of evidence indicating the medical necessity of the cane.

---

position. [ECF 11 at 2]. Indeed, as noted above "[a] prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity." *Daniels*, 2021 WL 667945, at *8 (quoting *Fletcher*, 2015 WL 4506699, at *8 (internal quotation marks omitted). Moreover, Plaintiff fails to quote the entirety of 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(C)(6)(a), which provides "the phrase 'documented medical need,' . . . mean[s] there is evidence from a medical source that supports your medical need for an assistive device . . . *for a continuous period of at least 12 months* (see 1.00C6a)." (Emphasis added). Simply put, even assuming this regulation had some bearing on Plaintiff's position, it is of little moment inasmuch as the record is devoid of any evidence that the quad cane was to be used for a continuous 12-month period.

Accordingly, the ALJ had substantial evidence to determine that the cane was not medically necessary under SSR-9P; thus, the magistrate judge correctly concluded the RFC's exclusion of cane use did not give rise to error.

### B. The Absence of Mental Limitations in the RFC Assessment

Plaintiff next objects to the "finding that 'the ALJ did explain why the Plaintiff's mild limitations [sic] [in] mental functioning were excluded from the RFC." [ECF 10 at 17]; [ECF 11 at 4]. Plaintiff, however, counters that the ALJ's asserted lack of explanation "is a violation of Fourth Circuit precedent, Agency policy, and even the statute itself, which provide that all functional limitations, even those caused by non-severe impairments, must be accounted for in the RFC." [ECF 11 at 5]. In response, the Commissioner argues that it is not legal error to "decline to assess a resulting RFC limitation" when such a limitation is mild at step two of the five-step process. [ECF 12 at 4]. Although the reasoning of the Commissioner is flawed, the Court agrees that declining to assess the mental limitations of Plaintiff in the RFC is not legal error.

The Social Security Act reads, in pertinent part:

> In determining whether an individual's physical or *mental* impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall *consider* the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.

42 U.S.C. § 423(d)(2)(B) (emphasis added). Therefore, the ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 636) (internal quotations omitted); *Tammy R. v. Kijakazi*, No.

1:22-cv-395, 2023 WL 6122140, at *6 (S.D.W. Va. Aug. 31, 2023), *report and recommendation adopted*, 2023 WL 6130565 (S.D.W. Va. Sep. 19, 2023). "Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Monroe*, 826 F.3d at 188 (quoting *Mascio*, 780 F.3d at 636); *see also Shank v. Saul*, No. 3:20-cv-444, 2021 WL 2767063, at *8 (S.D.W. Va. June 11, 2021) *report and recommendation adopted,* 2021 WL 2744550 (S.D.W. Va. July 1, 2021).

However, mental limitations "do not necessarily indicate work-related functional limitations that must be present in the RFC assessment." *Wall v. Saul* No. 2:20-cv-460, 2021 WL 5225792, at *8 (S.D.W. Va. June 2, 2021), *report and recommendation adopted*, 2021 WL 5230989 (S.D.W. Va. Nov. 9, 2021) (citing *Mascio*, 780 F.3d at 638). "[W]hen, as here, an ALJ determines that mental impairments create only a mild limitation, the ALJ is perfectly justified in concluding that no related functional limitation belongs in the RFC finding." *Mosley v. Berryhill*, No. 2:17-cv-4197, 2018 WL 4781297, at *9 (S.D.W. Va. Sept. 5, 2018), *report and recommendation adopted*, 2018 WL 4781183 (S.D.W. Va. Oct. 3, 2018); *Tammy R.*, 2023 WL 6122140, at *6; *see e.g.*, *Miller v. Colvin*, No. 2:13-cv-31251, 2015 WL 917772, at *21 (S.D.W. Va. Mar. 3, 2015) (affirming ALJ's decision to not include a mild mental limitation in the RFC where evidence was presented that the mental impairment was non-severe).

Even if an ALJ does not use a claimant's non-severe impairments in the RFC assessment, "neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments." *Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (emphasis in original); *see also* 42 U.S.C. § 423(d)(2)(B). If the ALJ decides that those non-severe limitations should not be considered, she must explain and support her "rationale for not

11

assessing mental limitations." *Hunt v. Kijakazi*, 1:21-cv-265, 2021 WL 9076248 (S.D.W. Va. Dec. 9, 2021), *report and recommendation adopted*, 2022 WL 2719968 (S.D.W. Va. Jul. 13, 2022); *see Kevin R. v. Kijakazi*, No. 2:22-cv-351, 2023 WL 5282400 (S.D.W. Va. Jul. 31, 2023), *report and recommendation adopted*, 2023 WL 5279652 (S.D.W. Va. Aug. 16, 2023); *see also Shank*, 2021 WL 2767063, at *8.

In this case, Plaintiff asserts that remand is proper because, in *Shank v. Saul*, No. 3:20-cv-444, 2021 WL 2767063 (S.D.W. Va. June 11, 2021), the Court remanded a decision because the ALJ's decision did not consider and explain the claimant's mild mental functional limitation in the RFC analysis [ECF 11 at 5]; *Shank*, 2021 WL 2767063, at *9. She further avers that the error in the present matter is "more egregious" inasmuch as Plaintiff has mild mental limitations in all four "paragraph B" categories, whereas the claimant in *Shank* only had one mild mental limitation. [ECF 11 at 5]. However, in *Shank*, the mental impairments were omitted from the RFC assessment entirely except from when they were listed alongside the Claimant's allegations. The omission of these limitations made it impossible for the reviewing magistrate judge to conduct any "meaningful review" to determine "whether the ALJ's decision is supported by substantial evidence." *Shank*, 2021 WL 2767063, at *9 (quoting *Clarence M. v. Saul*, No. CV SAG-19-2393, 2020 WL 3871142, at *4 (D. Md. July 9, 2020)).

In contrast, as the magistrate judge here correctly notes, the ALJ assigned to the present matter clearly evaluated Plaintiff's mental functional limitations, explained why they were not included in the RFC, and even explained why those mental limitations would not have precluded her from her past relevant work. At step two in the analysis, the ALJ addressed and considered the relevant evidence for Plaintiff's mental functional limitations. [ECF 6 at 18-20]. From there, the ALJ determined that since the evidence only indicated she suffered from mild

mental limitations in the four "paragraph B" categories, they are non-severe. [*Id.* at 19]. As such, the ALJ is only required to *consider* these limitations in the RFC. See *Britt*, 860 F. App'x at 262.

When explaining her findings from the RFC, the ALJ stated that "[d]espite alleging debilitating symptoms due to their physical and mental, the claimant has maintained varied and robust activities of daily living that are inconsistent with her claims of disability." [*Id.* at 25]. Such activities, among others, include managing finances, visiting family and talking on the phone, attending a full-time, online class, and taking care of dependents. [*Id.* at 18-19; 25]. The ALJ also reviewed the administrative findings of the DDS mental consultants, who both agreed generally that Plaintiff only had mild limitations in all four areas of the "paragraph B" criteria. [*Id.* at 27]. The ALJ finally concluded that "[b]ased on the foregoing…the claimant has the above residual functional capacity assessment, which is supported by… the claimant's functioning activities of daily living that include attending online classes." [*Id.*]. Although the ALJ's explanations for not including the non-severe mental impairments are not explicitly written in an "I did not include this because…" statement, she made it clear that the evidence used to determine the functional limitations caused by Plaintiff's mental impairments were considered in the RFC assessment, as required by our Court of Appeals. See *Britt*, 860 F. App'x at 262.

The ALJ went further than what was required as she explained that Plaintiff could perform her past relevant work as an order clerk. The ALJ stated the following:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed. The vocational expert, in response to a question from the undersigned that accurately reflected the above residual functional capacity, compared the requirements of the position of order clerk to the claimant's restrictions and found that the claimant was capable of this job in both actual and general performance. The undersigned, after a review of the evidence and a comparison between the functioning of the claimant and the requirements of

>the position, concurs with the vocational expert and finds that the claimant can perform this past relevant work.

[ECF 6 at 28]. The Court deems unconvincing Plaintiff's contention that because "the VE was never asked what impact the four missing functional limitations would have in combination on the semi-skilled work at issue here," the ALJ's "boilerplate" explanation "is an insufficient substitute for substantive analysis." [ECF 11 at 4 (internal citations and quotations omitted)]. The VE was not asked about mental limitations because the ALJ determined they were non-severe. Thus, after consideration by the ALJ, they were left out of the RFC. The ALJ sufficiently explains here why Plaintiff could perform her previous work.

Based on the evidence presented to and considered by the ALJ throughout her five-step analysis, the ALJ built "an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford*, 227 F.3d at 872)).

Accordingly, the ALJ had substantial evidence to determine that the mental functional limitations were non-severe, and she provided sufficient explanation for why they were not included in the RFC assessment. Thus, the magistrate judge did not err in his determination that "the ALJ did explain why Plaintiff's mild limitations [sic] [in] mental functioning were excluded from the RFC." [ECF 10 at 17].

### IV.

For the reasons stated, and having reviewed the record *de novo*, the court **ORDERS** as follows:

1. That the PF&R be, and it hereby is, **ADOPTED** and incorporated herein, together with the Court's additional analysis herein;

2. That Plaintiff's request for remand be, and it hereby is, **DENIED**;

3. That Defendant's request to affirm the final decision of the Commissioner be, and it hereby is, **GRANTED**;

4. That the final decision of the Commissioner be, and it hereby is, **AFFIRMED;** and

5. That this case be **DISMISSED** from the docket.

The Clerk is directed to send a copy of this written opinion and order to counsel and any unrepresented parties.

ENTER: August 8, 2024

Frank W. Volk
United States District Judge